*Nastri v. Dykes*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of March, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————

DAVID J. NASTRI,

> *Plaintiff-Appellant,*

> v.                                                                 No. 23-1023

KATIE DYKES, in her official capacity,

> *Defendant-Appellee.*

———————————————————————

For Plaintiff-Appellant: CAMERON L. ATKINSON, Atkinson Law, LLC, Harwinton, CT.

For Defendant-Appellee: TIMOTHY J. HOLZMAN (Blake T. Sullivan, Thadius L. Bochain, *on the brief*), Assistant Attorneys General, *for* William Tong, Attorney General for the State of Connecticut, Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 22, 2023 judgment of the district court is **VACATED** and **REMANDED** for further proceedings consistent with this order.

David Nastri appeals from a judgment of the district court dismissing for lack of standing his claim alleging under 28 U.S.C. § 1983 that Connecticut's ban on carrying firearms in state parks violates the Second and Fourteenth Amendments to the United States Constitution. Specifically, Nastri argues that the district court erred in concluding that he lacked standing to bring a pre-enforcement challenge to the regulation – Connecticut Agency Regulation § 23-4-1(c) – because he could not show a credible threat that Connecticut ("the

State") would enforce the law against him. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review *de novo* a district court's decision to dismiss a complaint for lack of standing. *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84–85 (2d Cir. 2014). The plaintiff bears the burden of establishing standing under Article III. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To do so, the plaintiff must show (1) "an injury in fact," (2) "a sufficient causal connection between the injury and the conduct complained of," and (3) "a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (alterations and internal quotation marks omitted).

Courts apply a distinctive rule to decide whether a plaintiff has standing to challenge the constitutionality of a law before it has been enforced against him. *See id.* at 159. In these pre-enforcement challenges, the plaintiff must show that the "threatened enforcement" of the law against him is "sufficiently imminent." *Id.* This imminence showing requires the plaintiff to demonstrate that (1) he "inten[ds] to engage in a course of conduct" that arguably involves a "constitutional interest"; (2) his intended conduct is "proscribed by the challenged law"; and (3) "there exists a credible threat" that he would be "prosecut[ed]" for

3

violating that law. *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (internal quotation marks omitted). While many pre-enforcement cases involve a threat of *criminal* prosecution, the "fear of civil penalties" can likewise be sufficient. *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000); *see also Susan B. Anthony List*, 573 U.S. at 165 ("[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review.").

The parties do not dispute that Nastri has established the first two imminence elements, in that he alleged an "intent[]" to carry his handgun in state parks for self-defense in violation of section 23-4-1(c). *Vitagliano*, 71 F.4th at 137. Thus, the central issue in this appeal is whether Nastri has demonstrated a credible threat that he would be cited for violating section 23-4-1(c) if he were to engage in that conduct.

Since the district court's ruling in this case, we had occasion to clarify the standard for a "credible threat of enforcement" in *Antonyuk v. Chiumento*, another case involving a pre-enforcement challenge to state firearms laws under the Second Amendment. 89 F.4th 271, 336 (2d Cir. 2023). We explained that "'the credible threat of prosecution' is a 'quite forgiving' requirement that sets up only

4

a 'low threshold' for a plaintiff to surmount." *Id.* at 334 (quoting *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)). Indeed, we do "not place[] the burden on the plaintiff to show an intent by the government to enforce the law against [him] but rather presume[] such intent in the absence of a disavowal by the government." *Id.* (alterations and internal quotation marks omitted). In other words, we presume that a credible threat of enforcement exists, and require the government to "rebut" that inference by "disavowing" its intent to enforce the statute, *id.* at 353 (alterations omitted), or by pointing to "another reason to conclude that no such intent exist[s]," *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (quoting *Hedges*, 724 F.3d at 197).

Significantly, we do not require a plaintiff to show any "indicia of future prosecution" in order to demonstrate a credible threat. *Antonyuk*, 89 F.4th at 334. "While evidence that a plaintiff faced either previous enforcement actions or a stated threat of future prosecution is, of course, relevant to assessing the credibility of an enforcement threat, none of these cases suggest[s] that such evidence is *necessary* to make out an injury in fact." *Id.* (alterations omitted) (quoting *Vitagliano*, 71 F.4th at 139). To the contrary, when it is "apparent" that the plaintiff's conduct is "subject to the statute," we presume that there exists a

5

credible threat of enforcement – whether or not a plaintiff points to additional evidence – and require the government to show otherwise. *Hedges*, 724 F.3d at 197.

That rule resolves this appeal. As is required to invoke the presumption, Nastri has shown that it is "apparent" that section 23-4-1(c) proscribes him from carrying a handgun for self-defense in Connecticut state parks. *Id.* Section 23-4-1(c) explicitly prohibits the "carrying of firearms . . . in any state park except as authorized by [Connecticut's Department of Energy and Environmental Protection ("DEEP")]," and DEEP has not authorized possession of handguns for self-defense. Conn. Agencies Reg. § 23-4-1(c). Nor does the State seriously dispute that the provision covers Nastri's conduct. Dykes Br. at 15 ("It is a generally applicable law that prohibits weapons in all State parks and forests without authorization from DEEP."). We thus presume that the State intends to enforce it, unless it sufficiently "disavow[s]" that intent or points to "another reason" demonstrating no such intent exists. *Tweed-New Haven Airport Auth.*, 930 F.3d at 71. The State falls short of either showing. Far from disavowing enforcement against Nastri, the director of Connecticut's Environmental Conservation Police testified at a deposition that his department (1) receives calls

about persons with firearms in state parks, (2) responds to those calls by sending officers to investigate, and (3) would take enforcement action if its officers found a person with an unauthorized firearm. That easily distinguishes this case from *Adam v. Barr*, in which we rejected a pre-enforcement challenge because the plaintiff failed to show any "particularize[d]" evidence that the government would enforce a federal drug law against him if he used narcotics for religious purposes. 792 F. App'x 20, 23 (2d Cir. 2019).

At best, the State offers a variety of reasons why Nastri's fear of enforcement is too "[s]peculati[ve]," such as the fact that Connecticut parks are sparsely patrolled, that Nastri has not run into any officers in the parks, and that Nastri does not believe anyone noticed he was carrying a handgun in the past. Dykes Br. at 34–35. Again, *Antonyuk* forecloses this sort of argument. "Although prosecution is not certain, [Nastri has] articulate[d] a plausible chain of events" that would lead to a citation. *Antonyuk*, 89 F.4th at 335; *id.* at 353 (explaining that enforcement threat is credible even if officers are not "proactive[]" and generally only respond to "complaint[s]" (internal quotation marks omitted)); *see also* App'x at 183 (testimony from the park police director that people who carry concealed handguns may "[i]nadvertently . . . reveal[]" their weapons to "bystanders").

7

Simply put, Nastri is "'not without some reason in fearing prosecution,' and [his] fears are neither 'imaginary nor wholly speculative.'" *Antonyuk,* 89 F.4th at 336 (alterations omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)).

Finally, the State suggests that the law at issue is moribund – and thus not likely to be enforced – because section 23-4-1(c) has "origins" dating to 1918. Dykes Br. at 6 n.2, 31 (explaining that Connecticut first banned possession of firearms in parks in 1918). But no matter the law's "origins," the State's own regulatory database indicates that section 23-4-1 was enacted in 1993 and amended as recently as 2017. *See* Conn. Sec. of State, *Connecticut eRegulations System* § 23-4-1 (2017), https://eregulations.ct.gov/eRegsPortal/Browse/RCSA/Title_ 23Subtitle_23-4Section_23-4-1/ [https://perma.cc/K6DH-ZWYX]; *see also* App'x at 30. So while it is not certain whether subsection 1(c) itself was amended as recently as 2017, it was enacted only three decades ago, and it is hard to see how that would make it so outdated as to suggest the State is no longer enforcing it. *See Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (finding that an ordinance passed in 1958 presented a credible threat of enforcement). In any event, *Antonyuk* places the burden on the State, not Nastri, to show a lack of intent

to enforce the law, and the State has not offered any enforcement statistics (or other evidence) indicating that section 23-4-1(c) has been enforced so rarely as to render it "moribund." *Antonyuk*, 89 F.4th at 334.

We have considered the State's remaining arguments and find them to be without merit.[1] Accordingly, we **VACATE** and **REMAND** the judgment of the district court for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] Although Nastri also challenges on appeal the district court's denial of his motion for reconsideration, we need not reach that issue here, because we find that Nastri has standing to bring this pre-enforcement challenge even without the enforcement statistics of section 23-4-1(c).